JOSEPH ABBOTT, Plaintiff in Error, THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

Upon the trial of an indictment for murder, a juror, who was challenged for favor, testified in substance, upon his direct examination, that he had read about the occurrence in the newspapers; that he had deliberated upon and thought about it; had formed, and had then, an opinion, based upon certain conditions or facts, and assuming that they were true; that he thought the opinion would not require evidence to remove; it was not a positive opinion. Upon cross-examination, he testified that he thought he could, and would, throw away any opinion he had, and be governed entirely by the evidence, and could render a verdict according to the facts as given on the trial, without regard to what he had heard before. *Held,* that the challenge was properly overruled.

Another juror, challenged for favor, testified that he recollected of reading the circumstances of the case. at the time when published in the papers, that he probably read the evidence, but did not remember so doing, or what it was. He thought he had formed an opinion at the time, and had not changed it; if selected as a juror, he would go according to the evidence; he had an opinion which he thought would require evidence, but not very strong, to remove. He was then asked: " Would the side against which you had formed the opinion have to produce stronger evidence than the other side to overcome the opinion ?" He

answered: "Well, of course it would have to be a little stronger one side than the other in my opinion." Upon cross-examination, he testified that he did not remember the particular circumstances of the killing; that it passed out of his mind until last night, and whatever opinion or impression he had was simply the result of what he remembered of what occurred at the time, and this impression would in no way affect his judgment upon all the evidence; that notwithstanding it he believed he could render a fair and impartial verdict upon the evidence. Upon redirect examination, the question above stated was substantially repeated, and a similar answer given. The challenge was overruled. *Held*, no error.

*Greenfield* v. *The People* (74 N. Y. 277) distinguished.

It appeared that the prisoner and R., the deceased, were at work in a shop in the State reformatory, where they were confined; they had had some altercation, when R. reached for an iron wrench near him, the prisoner, who was about nineteen feet distant, then seized an iron bar, went as fast as he could to where R. was, who then had the wrench in his hand, and was about to turn around, and struck him with the bar on the back of his head; struck him again as he was falling, and a third blow as he lay upon the floor. A witness for the defense was asked to state what was R.'s reputation as to being quarrelsome. This was objected to, and overruled. *Held* no error; that such evidence only is admissible where it is shown that an assault had been committed or threatened at the time of, or immediately preceding, the homicide, so as to justify a claim that the act was committed in self-defense.

Another witness was asked as to what passed in his mind when he saw R. reaching for the wrench; this was objected to and excluded. *Held* no error.

The court was asked to charge that the wrench was a dangerous weapon, sufficient to kill, and with which the deceased was capable of inflicting great bodily injuries. The request was refused, the court submitting that question to the jury. *Held* no error.

The court was requested to charge that it was the duty of the jury, if a reasonable doubt existed in their minds, from the evidence, as to the degree of crime, to convict of the "lesser degree." To this the court replied that it had already told the jury the prisoner was entitled to all reasonable doubt. *Held*, that this was a sufficient compliance with the request.

(Argued October 12, 1881; decided October 25, 1881.)

ERROR to the General Term of the Supreme Court, in the third judicial department, to review judgment entered upon an order made May 3, 1881, which affirmed a judgment of the Court of Oyer and Terminer, in and for the county of Chemung,

entered upon a verdict convicting the plaintiff in error of the crime of murder in the first degree.

The facts are sufficiently stated in the opinion.

*H. J. Dininny* for plaintiff in error. A challenge for favor " is to determine the indifference of the person proposed as a juror." (*Thomas* v. *People*, 67 N. Y. 218–221 ; *People* v. *Mallon*, 3 Lans. 224 ; *Tohman* v. *People*, 1 N. Y. 379–384.) The forming and expressing an opinion as to the guilt or innocence of the accused renders a juror incompetent. (*People* v. *Allen*, 43 N. Y. 28–34 ; *People* v. *Mallon*, 3 Lans. 225 ; *Cancemi* v. *People*, 16 N. Y. 501–505.) Upon a challenge for favor a juror is disqualified if he has formed and not expressed an opinion. (*People* v. *Mather*, 4 Wend. 230.) A fixed and absolute opinion is necessary on a challenge for cause, but not so on a challenge for favor. (*People* v. *Bodine*, 1 Denio, 280, 308 ; *Freeman* v. *People*, 4 Wend. 19.) There is still a distinction between a challenge for favor and for cause, notwithstanding chap. 475, of the Laws 1872, and modern legislation. (*Greenfield* v. *People*, 64 N. Y. 277, 281 ; *Thomas* v. *People*, 67 id. 218, 221.) The question provided for by Laws 1872, chap. 475, upon a challenge for cause, has no application to a challenge for favor. (Laws of 1872, chap. 475 ; 3 R. S. [6th ed.] 1062 ; *Thomas* v. *People*, 67 N. Y. 218, 221.) This court has the same power to pass upon the indifference of a juror as the trial court. (Laws of 1873, chap. 427 ; *Thomas* v. *People*, 67 N. Y. 222 ; *Greenfield* v. *People*, 64 id. 277, 281.) Plaintiff in error is entitled to have the question of the competency of jurors correctly passed upon before being put to this peremptory challenge. (*Greenfield* v. *People*, 6 Abb. N. C. 1, note 31 ; *People* v. *Bodine*, 1 Denio, 281 ; *Genette* v. *People*.) To say you challenge for favor is specific enough. (*Goonell* v. *People*, 1 Park. 217.) The rule that an error committed upon a trial may be overlooked when the party complaining was not prejudiced thereby is only applicable in cases where the error could, by no possibility, have produced injury. (*Stokes* v. *People*, 53 N. Y. 164.) By being compelled to use a pe-

remptory challenge upon an erroneous decision upon a chal-
lenge as to competency, a right has been abridged and lost.
(*Burt* v. *Pargand*, 9 Otto, 180, 181.) The exception to the
ruling sustaining objection to evidence showing Reed's reputa-
tion for quarrelsomeness in the prison was well taken. (*Egger*
v. *People*, 56 N. Y. 642; *Nichols* v. *People*, 23 Hun, 165;
*McKenna* v. *People*, 18 id. 580; *Slevins* v. *Brennan*, 79 N.
Y. 254; *Murphy* v. *People*, 63 id. 590; *Monroe* v. *State*, 9
Ga. 85; *Olen* v. *State*, 17 Ala. 587; *Franklin* v. *State*, 29 id.
14, *Thomas* v. *People*, 67 N. Y. 218, 224.) It was error to
exclude the evidence of John Dunn, as to what passed through
his mind when he saw Reed reach for the wrench, and what
he understood by Reed's actions. (*People* v. *Eastwood*, 14
N. Y. 562; *De Wit* v. *Barly*, 17 id. 340; *Gonzalez* v.
*People*, 35 id. 62; 3 Abb. N. C. 234; *Lindsey* v. *People*, 6
Park. 253; *Hardenburg* v. *Cockroft*, 5 Daly, 81; Abbott's
Trial Ev. 745, § 7; *West* v. *First Nat. Bk. of Elmira*, 20
Hun, 408.) The court erred in refusing to charge that the
wrench was a dangerous weapon. (*Reynolds* v. *People*, 7
Lans. 43; *Robinson* v. *McManus*, 4 id. 380; *Kavanagh* v.
*Wilson*, 70 N. Y. 179; *Milbank* v. *Dennistoun*, 21 id. 386;
*Comstock* v. *Dodge*, 43 How. 97.) The court erred in refusing
to charge " that it is their (the juror's) duty, if a reasonable
doubt exists in their minds from the evidence as to what degree
of crime, to convict the prisoner of the lesser degree." (*People*
v. *Lamb*, 2 Keyes, 360, 379.) Plaintiff in error is not bound
to show that errors were injurious to him; if any errors are
evident, he is entitled to a reversal unless defendant can show
that no injury has been done. (*Green* v. *White*, 37 N. Y.
405; *Stokes* v. *People*, 53 id. 164; *Endes* v. *Sternbergh*, 1
Keyes, 264–271; *Warrell* v. *Parmelee*, 1 N. Y. 519; *Ander-
son* v. *R. W. & O. R. R. Co.*, 54 id. 334· *Lattimer* v. *Hill*,
8 How. 171.)

*David B. Hill* for defendant in error. The jurors were
clearly brought within the provisions of the act of 1872, and
were competent. (1 Laws of 1872, 133; *Thomas* v. *The Peo-
ple*, 67 N. Y. 218; *Cox* v. *The People*, 80 id. 500; *Balbo* v.

*The People,* id. 484 ; *Pender* v. *The People,* 18 Hun, 560–564.) Exceptions taken by the prisoner to proceedings on the challenge of a juror for cause, are not open to examination at his instance, on error, if he subsequently, by a peremptory challenge, exclude the juror. (*Friery* v. *People,* 2 Abb. Ct. App. Dec. 215–220 ; 2 Keyes, 424–442 ; *People* v. *Bodine,* 1 Denio, 300, 310, 311; *Freeman* v. *People,* 4 id. 10, 31; 3 Wharton's Crim. Law, § 3152 ; 1 Bishop's Crim. Proc., § 949 ; *People* v. *Knickerbocker,* 1 Park. Cr. 302, 304.) The offer to show an irregularity in the drawing of the grand jury was properly refused. (1 Wharton's Crim. Law, §§ 468, 472; *People* v. *Robinson,* 2 Park. 311 ; 1 Wharton's Crim. Law, § 473 ; 3 id., § 3383; 1 Bishop's Crim. Proc., § 886 ; *People* v. *Griffin,* 2 Barb. 427, 429 ; *People* v. *Allen,* 43 N. Y. 28, 31 ; *People* v. *Benjamin,* 2 Park. 301–12 ; *People* v. *Hulbut,* 4 Denio, 133, 136.) Even if the wound was only charged to have been on the "left side," it was no error to permit proof that it was on the other side of the head. (Bishop's Crim. Proc., § 525 ; 2 Wharton's Crim. Law, § 1069; 1 Russell on Crimes [5th Am. ed.], 558, 562; *Sanchez* v. *People,* 22 N. Y. 149 ; *Real* v. *People,* 42 id. 170.) It was proper to ask the physicians whether the wounds which they discovered upon the deceased were sufficient to produce his death. (*Eggler* v. *The People,* 56 N. Y. 642.) The general character of the deceased for quarrelsomeness, vindictiveness and other like traits is all that is admissible in such cases as this. (2 Bishop's Crim. Proc., § 613 ; *Thomas* v. *The People,* 67 N. Y. 222; *McKenna* v. *The People,* 18 Hun, 581 ; *The People* v. *Lamb,* 2 Keyes, 360–365.) The question put to the witness Lyons by the defense, "what passed through your mind when you saw Reed reach for the wrench," was properly excluded. (*Gutchess* v. *Gutchess,* 66 Barb. 483 ; *Rich* v. *Jackway,* 18 id. 357 ; *Morehouse* v. *Matthews,* 2 Comst. 514; *Gibson* v. *Williams,* 4 Wend. 320.)

MILLER, J. The prisoner was convicted of the crime of murder in the first degree at a Court of Oyer and Terminer,

held in the county of Chemung, in the month of September, 1880, and sentenced to be executed according to law. The conviction was affirmed at General Term, and the proceedings are brought before us for review by writ of error. We are not authorized, upon this writ of error, to review the facts, and can only consider such legal questions as are presented by the record before us. Upon the trial a challenge was made for favor to two of the jurors who were drawn. Each of the challenges made were overruled, and exceptions taken, and it is claimed that the judge erred in both of his rulings in this respect. One of the jurors, William A. Ward, upon being examined in support of the challenge, testified in substance upon his direct examination that he had read about the occurrence in the newspapers, and had formed an opinion upon the question, and had formed an opinion based upon certain conditions or facts, and assuming that they were true; that he thought the opinion would not require evidence to remove, and was not a positive opinion. That he had deliberated upon it, and thought of it, and had now an opinion one way or the other upon certain conditions of facts. Upon his cross-examination, he testified that he thought he could and would throw away any opinion he had, and be governed entirely by the evidence, and could go into the jury box and render a verdict according to the facts as given on the trial, without regard to what he had heard before. The other juror, Weaver, upon being challenged for favor, testified that he recollected of reading the circumstances of this case at the time when published in the papers; that he probably did read the evidence, but don't remember reading it, nor what it was. He thought he had formed an opinion at the time, that he had not changed it, that it was settled when he read it, that if selected as a juror, he would go according to the evidence, that he had an opinion which he thought it would require some evidence to remove, but not very strong evidence. Upon being asked, "Would the side against which you had formed the opinion have to produce stronger evidence than the other side to overcome the opinion?" he answered: "Well of course it would have to be a little stronger one side

than the other, in my opinion." Upon being further examined by the district attorney, he testified that he did not remember the particular circumstances of the killing, that it passed out of his mind until last night, and whatever opinion or impression he had was simply the result of what he remembered noticing of what occurred at the time, and this impression would in no way affect his judgment upon all the evidence in the way he looked at it. The witness also stated that he believed he could render, notwithstanding his impression, a fair and impartial verdict upon the evidence. The prisoner's counsel then put the following question : "You say that the side against whom you had formed an opinion would have to bring stronger evidence than the other side to overcome that opinion ?" and he answered: "Yes, sir; to overbalance it." Each of the jurors was held to be competent and challenged afterward peremptorily by the prisoner's counsel and excluded from the jury box. The question to be determined is whether the jurors, or either of them, were disqualified under the facts presented. Under the act of 1872 (Chap. 475), provision is made in regard to a challenge for principal cause, but it has no application to a challenge for favor, and the latter challenge is left unaffected by that act. (*Thomas* v. *The People*, 67 N. Y. 218, 221.) This challenge relates to the indifference of the juror, and the court has full authority to pass upon that question by virtue of chapter 427 of the Laws of 1873, which provides for a review of the decision upon writ of error, the same as other questions arising upon the trial. This court, therefore, has the same power to review the facts and determine whether the jurors named were indifferent as existed in the trial court. The evidence of the first juror evinces that he had heard of and read about the case, but it does not indicate that a fixed and settled opinion had been formed which should exclude him from the jury box. The alleged opinion was based upon a certain fact or condition of facts, if proved to be true.

He swears, amongst other things, it would not require evidence to remove it; it was not a settled or a positive opinion, and with such opinion he would be governed by the evidence

and render a verdict accordingly. It was very evident that the alleged opinion was merely an impression which would not affect the juror in the conscientious discharge of his duty, and the court, under the circumstances, seeing the juror and his manner of testifying, were justified in holding that he was competent. The statement that a juror has an opinion often arises from the manner in which the questions are put, and is not the result of actual examination of the state of his mind. The mere reading the newspapers in regard to a criminal offense will create some impression upon the reader, but unless a determination is arrived at after due consideration, cannot of itself be regarded as the basis of an opinion which should exclude a juror. Jurors are also often cautious in stating the condition of their judgment lest they may do injustice, and when they have fairly stated the information which they have had, and the condition of their minds, and arrived at the conclusion that they can act impartially in a capital case, unless it is apparent that they are laboring under an impression which will prevent justice being administered, they should not be set aside as incompetent.

As to the second juror his information does not appear to have been as great as the first one. He had read and heard less about the case. Had not thought upon the case, and although he states when asked that he had an opinion which was settled, and when he first read of the case and had not changed it, he says he could go into the jury box and act according to the evidence, and although he states that the evidence would have to be a little stronger one side than the other, this amounts to no more than an expression that the evidence should preponderate in order to warrant a verdict, and is not, as I understand, a statement that less evidence would be required to convict, than if he had not heard or read about the case, or had no impression on the subject. This construction is supported by his subsequent evidence that his opinion or impression is the result of what he remembered noticing of what occurred and that this impression would not affect his judgment.

As the evidence stood as to the last juror we cannot resist

the conclusion that he was a fair-minded and conscientious man who would have weighed the evidence carefully and impartially entirely unbiased and uninfluenced by what he had read and heard, and that he had no opinion or impression which the law regards as a disqualification.

The question discussed has been the subject of frequent consideration in recent decisions of this court, and in no case has it been held that, under circumstances like those here presented, a juror was disqualified.  (See *Thomas* v. *The People*, 67 N. Y. 218 ; *Greenfield* v. *The People*, 74 id. 277 ; *Balbo* v. *The People*, 80 id. 484 ; *Cox* v. *The People*, id. 500.)  In the *Thomas Case*, the juror swore he had an opinion, or an impression ; that he thought it would take evidence to remove that impression, but he would decide the case upon the evidence and he believed he would render an impartial verdict upon the evidence unbiased by such opinion, and it was held that the court was justified in holding the juror to be indifferent.  In the *Greenfield Case* one of the jurors had read the evidence upon a former trial and had formed an opinion or impression from such report.  Another had read an account of the evidence and had formed an impression or opinion on the supposition that it was true, which it would take evidence to remove ; that he still entertained the same, and never had occasion to change or doubt the truth of it, and had an opinion against the prisoner as a man.  In the opinion of the court a distinction is recognized when the opinion is based upon the truth of statements upon the basis of which it had been formed, and was hypothetical and contingent, and where it was based upon testimony actually given under oath and with the solemnity and importance of a trial for murder.  This court was of the opinion that the challenges were properly interposed and reversed the judgment. The case is distinguishable from the one at bar, and the evidence was far stronger to show that an opinion or impression had been formed which disqualified the jurors objected to. In the *Balbo Case*, the juror had read an account of the murder in a newspaper which it was his impression was a report of the testimony taken upon the coroner's inquest, and swore

that he had formed a positive and clearly marked opinion as to the guilt of the prisoner, which was still in his mind, and that it would require strong evidence to remove the opinion he then entertained in regard to the case. He also swore that his impressions would not prevent his acting fairly and impartially, and he had no doubt he could give a verdict upon the evidence without being influenced or biased by any opinion he had. This court held that there was no error in overruling the challenges. The evidence of incompetency was far stronger than in the case at bar, and within the case last cited, the decision here may be upheld. In *Balbo's Case*, the court reviewed the cases of *Thomas* and *Greenfield*, and point out the distinction between the latter case and that of Balbo, where the opinion was formed without reflection upon a casual reading of a newspaper report of testimony before the coroner, taken some months previously. If the decision in the latter case could be upheld, there is far stronger ground for sustaining the rulings of the trial court in the case at bar. In the *Cox Case* the juror challenged had also formed an opinion from newspaper reports based upon the supposed truth of the statements which it would require evidence to remove, and it was decided that the trial court properly held that he did not have such an opinion as would prevent him from acting fairly and impartially as a juror in the case. It is evident that the jurors in the case at bar had no fixed opinions, no prejudice or bias, and no especial interest in the case, which would affect their judgment, and only an impression such as might be formed from the perusal of newspapers, which would not influence or control their judgment or decision, and that no error was committed by the judge in overruling the challenges.

Upon the trial the counsel for the prisoner asked one of the witnesses the following question: "State, if you will, what sort of a man this man Reed was, as to his disposition, whether he was a quarrelsome man." This was objected to, the objection overruled, and the witness answered: "I was not acquainted with the man; all I know was hearsay." The question was then put: "What was his reputation there?" This was objec-

ted to, the objection sustained, and the prisoner's counsel excepted.

We think that the question related to the quarrelsomeness of the deceased which had immediately before been the subject of inquiry, and not to his general reputation, and therefore it was sufficiently specific. In a case of homicide where there has been an assault made from which death ensued, it is competent to show the reputation of the assailant who was killed, for quarrelsomeness, vindictiveness and other like traits. (*Thomas v. The People*, 67 N. Y. 222; *McKenna v. The People*, 18 Hun, 581.) But such evidence is only admissible where it is shown that an assault has been committed, or threatened at the time when the homicide was committed or immediately preceding it, or is intimately connected with it so as to justify the taking of life in self-defense, or to ward off, or prevent a great impending and imminent danger of bodily harm. (*The People v. Lamb*, 2 Keyes, 360.) According to the prisoner's testimony he saw the deceased reaching for a wrench. He seized an iron bar, and went over where the deceased was as fast as he could. The deceased was still reaching for the wrench, had it in his hand, and was about to turn around when the prisoner struck him upon his head on the right side, and struck three blows in all. It is also proved that the prisoner was some nineteen feet off, when he rushed toward the deceased, struck him from behind a powerful blow on the back of his head which made him reel or fall, and while he was falling struck him another heavy blow, and then a third blow while lying on the floor. Under the circumstances there is no ground for claiming that the act was committed in self-defense. The prisoner was the first assailant, and with a dangerous weapon before the deceased had approached him, attacked the deceased, and even struck him after he had fallen and lay almost senseless on the floor at his feet. The prisoner was in no immediate danger, nor was he driven to the wall, and did not act in self-defense. Notwithstanding the quarrel which had preceded the assault, there was no ground for apprehension of great immediate bodily harm, and no reason exists for claiming that the act

was committed in self-defense at the time, and the testimony was therefore incompetent.

Nor was any error committed in excluding the evidence of John Dunn as to what passed in his mind when he saw Reed reaching for the wrench, or what he understood from his actions in reaching for the wrench. No principle is better settled than that the belief, thoughts or operation of the mind of a witness are not admissible evidence as a general rule. He must testify only as to facts within his knowledge, and cannot give evidence outside of this, unless a case is made out where his opinion may be asked. This case is not brought within any such exception, and none of the authorities cited by the counsel for the prisoner have any application.

It is also insisted there was error in the refusal of the court to charge as requested in reference to the wrench being a dangerous weapon, sufficient to kill the prisoner, and by which deceased was capable of inflicting great bodily injuries that might cause the prisoner's death. The court submitted the whole question to the jury as to the wrench being a dangerous weapon, and refused to charge in the language requested. This was a matter entirely for the consideration of the jury, and it was for them to determine from the evidence, and not the court, whether the weapon was dangerous and sufficient to kill. The proposition, as presented, was properly refused.

The request to charge that it was the duty of the jury, if a reasonable doubt existed in their minds from the evidence as to what degree of crime the prisoner was guilty, to convict of the lesser degree, was sufficiently answered by the judge. He said that he had told the jury that the prisoner was entitled to the benefit of all reasonable doubt. No exception was taken to this, and no claim made that it was not satisfactory. It must, therefore, be assumed that it was acquiesced in as covering the request, as it really did.

No other questions are raised which demand comment, and we are satisfied that the trial was in all respects fairly conducted without the violation of any legal rules, and the prisoner was properly convicted.

The judgment and conviction must, therefore, be affirmed, and the proceedings remitted, with directions to proceed according to law.

All concur.

Judgment affirmed.